```
                    UNITED STATES DISTRICT COURT

                  FOR THE EASTERN DISTRICT OF MICHIGAN

                           SOUTHERN DIVISION



UNITED STATES OF AMERICA,

                  Plaintiff,              Case No. 11-20365

      -vs-

                                          Detroit, Michigan

SURYA NALLANI,                            October 15, 2015

                  Defendant.
------------------------------/

           TRANSCRIPT OF CONTINUATION OF PLEA HEARING

              BEFORE THE HONORABLE VICTORIA A. ROBERTS

                  UNITED STATES DISTRICT COURT JUDGE
```

**APPEARANCES:**

| For the Government: | **John K. Neal** |
| | **Philip A. Ross** |
| | United States Attorney's Office |
| | 211 W. Fort Street |
| | Detroit, MI 48226 |
| For the Defendant: | **Joseph E. Richotte** |
| | **George Donnini** |
| | BUTZEL LONG, P.C. |
| | Stoneridge West |
| | 41000 Woodward Avenue |
| | Bloomfield Hills, MI 48304 |

**Proceedings taken by mechanical stenography, transcript produced by computer-aided transcription**

|   |   |
|---|---|
| 1 | Detroit, Michigan |
| 2 | Thursday, October 15, 2015 |
| 3 | (At about 8:45 a.m.) |
| 4 | - - - - |
| 5 | (Call to Order of the Court) |
| 6 | THE CLERK OF THE COURT: The Court callas the case of United States of America versus Surya Nallani, case number 11-20365.  Counsel, please state your appearances for the record. |
| 9 | MR. NEAL:  Good morning, Your Honor. John Neal and Philip Ross appearing on behalf of the United States. |
| 11 | THE COURT:  Good morning. |
| 12 | MR. RICHOTTE:  Good morning, Your Honor.  Joe Richotte and George Donnini appearing on behalf of Dr. Nallani who is present. |
| 14 | THE COURT: Thank you.  Good morning, everyone. You can take your seats.  When were we here last; was it August? |
| 16 | MR. NEAL:  Yes, Your Honor.  It was August 31st. |
| 17 | THE COURT: Good morning, Dr. Nallani.  How are you? |
| 18 | DR. NALLANI:  Good. |
| 19 | THE COURT: Are you ready to do this today? |
| 20 | DR. NALLANI:  Yes. |
| 21 | THE COURT:  Yes?  Very good.  So we were here the end of August and I'm not going to start all over again, but when we were here the end of August, the Court did arraign you on the Information, explained what this plea process was going to look like.  We went through all of the rights that you were going to lose.  Counsel for the Government went through the Rule 11 Plea Agreement, the statutory |

penalties which are very different from your Rule 11 Agreement.  I think that you acknowledged that you had gotten good counsel from Mr. Richotte and Mister -- I'm drawing a blank on --

MR. DONNINI:   -- Donnini.

THE COURT:   -- Donnini, Mr. Donnini.  And so I want to confirm that since August 31st and now, you've had an opportunity to talk to Mr. Richotte and Mr. Donnini?

DR. NALLANI:  Yes.

THE COURT: And you talked more about this plea and the need for you to establish a factual basis for the plea?  And do you believe you've gotten good counsel since August 31st?

DR. NALLANI:  Ah-hum.

THE COURT: Do you have any complaints about their representation of you since then?

DR. NALLANI:  Definitely not.

THE COURT: I think that -- so I'm not going to do this again, but I am going to pick up -- I think you did plead guilty to Money Laundering, but then you didn't establish the basis for your plea.  So we will place you under oath again and I would like you to enter your plea on the record and then talk about the basis for your plea, okay?

THE CLERK OF THE COURT:  Will you raise your right hand please?

**SURYA NALLANI, SWORN UNDER OATH AT ABOUT 8:47 a.m., TESTIFIED:**

THE COURT: So, Dr. Nallani, you -- the Information charges you with Money Laundering in violation of Title l8 U.S. Code Section 1957.  What is your plea to that charge?  How do you plead?  Do you plead guilty or do you plead not guilty?

1  DR. NALLANI:  Oh, today?

2  THE COURT: Yes.

3  DR. NALLANI:  Oh, guilty.

4  THE COURT: So would you explain to the Court what you did and why it is that you are entering this guilty plea today?

6  DR. NALLANI:  Okay.  There are four points.  I had bank accounts, Charter One and Chase.  For the business it was Charter One and the personal was Chase.  There was -- on the second point, February 17th I was arrested -- and February 17th I was arrested.

10  THE COURT: What year was that, Dr. Nallani?

11  DR.  NALLANI:  In 2011, and then okay, I had to withdraw 162,000 from the Charter One -- no, Charter One was closed.  I'm sorry.  From Chase.  I had to pay 25,000 to Mr. Jim Burdick; he was my attorney then and we needed money for the payroll, and then the remaining money I opened up a new account in Chase, I think 51,000.

16  The third point.  The third point is it looks like there's some money in the account; we shouldn't have been there.  That's the third point.

18  The fourth point.  I think I didn't mean to do this.  We should question -- everybody should question -- we should question our spouses regardless.  The fourth point is we should ask questions.  It doesn't matter if it's your husband.  We should ask questions and then you can get answers.  I should have asked him questions, right?

23  THE COURT: Dr. Nallani, may I ask you a question?  You say the money should not have been there.  Are you talking about the 162,000 that you withdrew from the Chase Bank, that it should not have been there?

DR. NALLANI: Right. It seems like --

THE COURT: So did that money come from your husband's medical practice?

DR. NALLANI: I'm sorry?

THE COURT: The money, the $162,000, where did it come from?

DR. NALLANI: Like we took it out from Chase. That's my personal account, so because the Charter One was closed, right, by the Government so I needed money to pay my attorney and to payroll.

THE COURT: I understand you withdrew it, but what was the source of the money?

DR. NALLANI: We take out money from Charter One and put them in Chase. Okay, claims. Claims paid by the Government.

THE COURT: Medicare billings to the Government?

DR. NALLANI: Yeah. My practice was the home care.

THE COURT: And so when you say you should have asked questions of your husband, what do you mean? Was there a question about those funds and the billings that resulted in that money?

DR. NALLANI: Yes, it looks like it. We all should question.

THE COURT: So what was questionable about the billings?

DR. NALLANI: It looks like I should have -- he was doing the billing, right? So like he was -- he did the billing and like I should ask him, right? What the billing is and I should question, so that's what it is.

MR. DONNINI: Your Honor, maybe if I asked some pointed questions we will see what the answers might be.

MR. DONNINI: Dr. Nallani, did you maintain -- it was actually a Charter

|    |    |
|----|----|
| 1  | One bank account back in February of 2011? |
| 2  | DR. NALLANI: Yes. |
| 3  | MR. DONNINI: Did you withdraw $162,000 from that bank account on |
| 4  | February 18th, 2011? |
| 5  | DR. NALLANI: That's from Chase. |
| 6  | MR. DONNINI: Okay, fine. Forget about Chase or Charter One. Did |
| 7  | you withdraw $162,000 from a bank account at a financial institution on that date? |
| 8  | DR. NALLANI: Yes. |
| 9  | MR. DONNINI: Do you now know that there was some monies in there |
| 10 | that should not have been in that account? |
| 11 | DR. NALLANI: Looks like it. It shouldn't have been there. |
| 12 | MR. DONNINI: And did you fail to ask the appropriate questions to |
| 13 | determine the source of some of those funds in that account? |
| 14 | DR. NALLANI: You mean like after 2011? |
| 15 | MR. DONNINI: On or before that date. |
| 16 | DR. NALLANI: I should have asked questions. |
| 17 | MR. DONNINI: Your Honor, that really I believe satisfies the elements. |
| 18 | Basically the elements are there was money in that account that should not have |
| 19 | been there, so there were monies in the account that were -- I'll call it improperly |
| 20 | obtained from specified unlawful activity; not that Dr. Nallani committed those |
| 21 | specified unlawful activities, but that monies were in that account that should not have |
| 22 | been there that she withdrew funds from that account, so that account had essentially |
| 23 | tainted funds in it and that she was blind to the fact because she didn't ask the |
| 24 | appropriate questions of her husband. |
| 25 | THE COURT: I didn't hear an acknowledgment that Dr. Nallani knew |

that the money came from unlawful activity. She said only that the money should not have been there. It could have been from anyplace, not necessarily unlawfully obtained, so I haven't heard that. Government, are you satisfied?

MR. NEAL: Your Honor, I think perhaps a few additional pointed questions may get us there. Dr. Nallani, the money that constituted the check for $162,000, that came from your medical practice, right?

DR. NALLANI: Yes. Yes.

MR. NEAL: Srinivas Nallani, your husband is responsible for billing for that medical practice, is that right?

DR. NALLANI: Yes.

MR. NEAL: You are aware that your husband, Srinivas Nallani, over-billed some claims for that in effect medical practice, is that correct?

DR. NALLANI: (No response)

MR. NEAL: And to be clear, Doctor, I'm talking about Srinivas Nallani.

THE COURT: I'm sorry. What was your question? Are you aware that he over-billed and what was the rest of your question?

MR. NEAL: Are you aware that Srinivas Nallani over-billed certain of the claims for your medical practice?

THE COURT: Over-billed, okay. To Medicare, is that your question?

MR. NEAL: Yes, Your Honor.

DR. NALLANI: I want to plead, but I'm under oath. I can't say this.

MR. RICHOTTE: Your Honor, may we approach for a moment?

THE COURT: Okay.

**(DISCUSSION AT THE BENCH OFF THE RECORD)**

MR. RICHOTTE: Thank you, Your Honor. Your Honor, if we may I

would propose reading the factual basis to Dr. Nallani and then asking her if that is a fair and accurate factual statement.

THE COURT: Okay.

MR. RICHOTTE: Thank you, Your Honor. Dr. Nallani, I'll read to you this paragraph and I'd like you to tell me if this is accurate and true: On February 18th, 2011 you engaged in a monetary transaction in the United States by withdrawing $162,000 from a financial institution. The source of these funds was from specified unlawful activity. Srinivas Nallani billed the Medicare Program for services rendered by nurse practitioners and physician's assistants as if they were performed by a physician, resulting in a l5% over-payment by the Medicare Program for the services rendered. You were willfully blind to the fact that the monetary transaction in which you engaged was in such criminally derived property. Is that a true and accurate statement?

DR. NALLANI: Yes, kind of.

THE COURT: I'm sorry. Dr. Nallani, what did you say?

DR. NALLANI: Kind of.

THE COURT: Kind of true.

DR. NALLANI: Everything is fine. I'm taking the plea.

THE COURT: Dr. Nallani, I'm still troubled. Mr. Richotte asked you if this was a true statement and your response was kind of, and I can't take a guilty plea with that kind of hesitation. I can't. I won't do it.

MR. RICHOTTE: We agree, Your Honor.

MR. NEAL: Government agrees, Your Honor.

THE COURT: So can I see Counsel for a moment?

**(DISCUSSION AT THE BENCH OFF THE RECORD)**

THE COURT: So that concludes this attempt to get Dr. Nallani's plea. She is not able to establish a factual basis for her guilty plea to Money Laundering, so we will set a trial date. You all -- the lawyers will talk about that and you'll get back with Carol and submit a speedy trial stipulation, okay?

MR. NEAL: Thank you, Your Honor.

MR. RICHOTTE: Thank you, Your Honor.

**(Proceedings adjourned at about 9:06 a.m.)**

- - -

**COURT REPORTER'S CERTIFICATION**

STATE OF MICHIGAN)
               ) SS.
COUNTY OF WAYNE )

I, Janice Coleman, Federal Official Court Reporter, in and for the United States District Court for the Eastern District of Michigan, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in this matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

        /S/ JANICE COLEMAN

        JANICE COLEMAN, CSR NO. 1095, RPR

        FEDERAL OFFICIAL COURT REPORTER

DATED: March 21, 2017